```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
          v.                  )    Cr. No. 20-10148-MLW
                              )
STEPHEN SKEIRIK,              )
     Defendant.               )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                          May 26, 2023

I.  SUMMARY

On February 27, 2020, Defendant Stephen Skeirik was arrested by Lawrence, Massachusetts police officers after detectives witnessed Skeirik participate in what they believed to be a drug deal. A firearm, drugs, and cash were discovered incident to Skeirik's arrest. A search of Skeirik's home conducted the same day pursuant to a search warrant led to the discovery of a second firearm, ammunition, and drugs.

Skeirik filed a Motion to Suppress "all evidence" stemming from his February 27, 2020 arrest and the subsequent search of his house. Mot. to Suppress, Dkt. No. 90. In essence, Skeirik alleges that: (1) the police officers lacked probable cause when they seized him outside of his home; and (2) the search warrant for his home was invalid because there was not probable cause to believe that evidence of a crime would be found there. See id. For the reasons described below, both arguments are unmeritorious. Therefore, the Motion to Suppress is being denied.

II.  PROCEDURAL HISTORY

On August 11, 2020, Skeirik was charged with a single count of being a felon in possession of firearms and ammunition (specifically, two Ruger LC9s) in violation of 18 U.S.C. §922(g)(1). See Indictment, Dkt. No. 9.

On January 12, 2022, Skeirik filed a motion to compel disclosure and access to an unnamed "informant," referring to the complaint of a retired police officer of possible drug activity at Skeirik's address that led to his being surveilled and arrested. See Mot., Dkt. No. 82 (denied without prejudice for lack of affidavit); Mot., Dkt. No. 84 (renewed motion for the same). The court denied the motion on June 22, 2022. Order, June 22, 2022, Dkt. No. 88. The court noted that Skeirik acknowledged that the retired officer had nothing to do with the alleged illegal activity and was, therefore, a "mere tipster." Id. at 3. Because there was "no indication that the tipster has any evidence relevant to the merits of the felon in possession of a firearm charge in this case, let alone any material exculpatory evidence," the court found this was not an exceptional case in which the defendant's interest in knowing the tipster's identity outweighed the source's interest in his own safety. Id. at 4.

The court ordered the defendant to file a motion to suppress by August 20, 2022, and the government to file any reply by

September 13, 2022. Id. at 5. The parties did so. See Motion, Dkt. No. 90; Gov't Supp. Opp'n, Dkt. No. 92.

A hearing on the renewed motion to suppress was scheduled for February 6, 2023, Order, Dec. 27, 2022, Dkt. No. 95, but was twice continued, first at the defendant's request to assure the availability of potential witnesses, see Order, Jan. 24, 2023, Dkt. No. 98, and second at the request of the government because of the illness of the government's counsel, see Order, Mar. 2, 2023, Dkt. No. 104. A third motion to continue at the request of the defendant was denied. See Order, Apr. 26, 2023, Dkt. No. 108. An evidentiary hearing on the motion to suppress was held on May 1 and 2, 2023.

III. THE FACTS RELATING TO THE MOTION TO SUPPRESS

The court finds that the following facts have been proven by a preponderance of the credible evidence.

On February 27, 2020, Lawrence Police Department detectives were conducting surveillance around 36 Norris Street in Lawrence, following the complaint of a retired police officer who lived in the area. The retired officer had reported observing activity at that address that indicated to him possible drug dealing. May 1, 2023 Tr. at 36-38, Dkt. No. 115. 36 Norris Street is a two-family house with two front doors, one for 36A and one for 36B. Based on their experience, the detectives knew that Lawrence was a "source city" to which buyers came from out of state, including New

3

Hampshire, to buy drugs more cheaply than they could at home. Although the detectives were not aware of any drug dealing on Norris Street, it is a part of a high crime area. More specifically, Norris Street dead-ends into East Haverhill Street, the 200 block of which - a quarter mile away from 36 Norris Street - was known to the detectives to be notorious for drug trafficking. May 1, 2023 Tr. at 65-66; May 2, 2023 Tr. at 32-33, Dkt. No. 116.

Detective Aaron Blanco was watching 36 Norris Street from an unmarked police car parked facing East toward the house and approximately 100 yards away from it. May 2, 2023 Tr. at 47. At about 2:40 p.m., Blanco observed a white Kia with New Hampshire license plates parked in front of 36 Norris Street. The Kia faced West and Blanco could see through the windshield. The driver was Rocco Anthony Mastrangelo, who owned the Kia. May 1, 2023 Tr. at 42-43. Blanco radioed Detectives Robert Lakin and Charelis Rivera, who were in a second unmarked police car on the West side of Norris Street, facing East. Id. at 49; May 2, 2023 Tr. at 37.

The detectives observed Skeirik leave 36A Norris Street and approach the Kia. Skeirik had a fanny pack strapped like a seatbelt across his chest. The detectives saw Skeirik remove the fanny pack as he got into the Kia's passenger seat and hand it to Mastrangelo. May 1, 2023 Tr. at 44-45; May 2, 2023 Tr. at 38-39. The detectives then saw movement consistent with Skeirik and Mastrangelo passing objects back and forth and looking at something below the dashboard

4

of the car. May 1, 2023 Tr. at 45; May 2, 2023 Tr. at 26-27. At one point, Skeirik got out of the car and left the passenger side door open. Skeirik continued his conversation with Mastrangelo, gesticulating as if he was arguing, before getting back into the Kia. The detectives saw that Skeirik no longer had the fanny pack. May 1, 2023 Tr. at 47-48; May 2, 2023 Tr. at 27. Skeirik remained in the Kia with Mastrangelo for another fifteen minutes.

Blanco then radioed Rivera and asked her to get out of her vehicle to conduct surveillance on foot. Because there was no sidewalk, she walked past the Kia on the grass of 36 Norris Street. May 1, 2023 Tr. at 49-51, 53; May 2, 2023 Tr. at 25. Rivera was in direct communication with Lakin via speakerphone. Rivera told Lakin that she was being watched but did not communicate any other observations to Blanco or Lakin. May 1, 2023 Tr. at 53; see May 2, 2023 Tr. at 42-43.

As Rivera approached the Kia, all movement between Skeirik and Mastrangelo ceased, and both men were alert to her presence. May 1, 2023 Tr. at 50; May 2, 2023 Tr. at 43, 74. Once Rivera walked past the Kia and farther down Norris Street, she walked into a driveway and out of sight. Mastrangelo and Skeirik then drove the Kia in a "slow roll" down the street following Rivera, engaging in what appeared to Blanco to be "countersurveillance." May 1, 2023 Tr. at 51. When the Kia reached the end of Norris Street it made a U-turn. It returned to park again in front of 36

Norris Street, facing West toward Lakin's unmarked car. While this was happening, Rivera returned to Lakin's vehicle. Skeirik then got out of the Kia and stood on the lawn of 36 Norris Street, looking back and forth between Blanco and Lakin's vehicles. The detectives again saw that Skeirik no longer had the fanny pack. May 1, 2023 Tr. at 52-54; May 2, 2023 Tr. at 31.

At this point, Blanco directed Lakin and Rivera to move in on the Kia. Both unmarked cars converged on the Kia at high speed. May 1, 2023 Tr. at 55-56; May 2, 2023 Tr. at 28-29. Blanco's vehicle stopped abruptly and bumped into the Kia. See May 1, 2023 Tr. at 56; May 2, 2023 Tr. at 78, 92; see also Ex. 13, Dkt. No. 113 (photograph of damage to "Rocco's" car). As the police converged on the Kia, Skeirik turned and ran up the driveway shared by the properties at 36A and 38 Norris Street. May 2, 2023 Tr. at 67, 79-80. Blanco and Rivera exited their vehicles, identified themselves as police, and ordered Skeirik to freeze. Skeirik, however, continued to flee. Blanco and Rivera pursued him on foot. Id. at 88-89.

Skeirik attempted to jump over a lawnmower in the driveway but stumbled. May 1, 2023 Tr. at 58; May 2, 2023 Tr. at 89, 102-03. As he stumbled, a firearm slipped from Skeirik's pocket. The pursuing officers saw the firearm. One of them yelled "Gun! Gun!" May 2, 2023 Tr. at 90. As the detectives attempted to tackle Skeirik, but before touching him, Skeirik threw the gun over a

6

fence into a neighboring yard. May 1, 2023 Tr. at 58-60. Moments later, Skeirik was tackled to the ground by Blanco and Rivera, handcuffed, and told he was under arrest. May 2, 2023 Tr. at 90; May 1, 2023 Tr. at 59-60. Officers searched Skeirik and found four bundles of United States currency totaling $4,205 and a cell phone. Id. The firearm that Skeirik had thrown over the fence was recovered. May 1, 2023 Tr. at 60.

As Skeirik was being led back to the police cars, unprompted by any questions, he called out to a woman in the house: "I'm going to jail for a long time!" May 2, 2023 Tr. at 65-66, 82-83; May 1, 2023 Tr. at 60-61. Skeirik had not yet been given Miranda warnings. Skeirik's girlfriend, Ashley King, emerged from the house.

Police ran a Criminal Justice Information Services ("CJIS") query on Skeirik. It revealed four active warrants for his arrest for crimes including drug distribution. The CJIS query also provided information that Skeirik resided at 36A Norris Street. See May 1, 2023 Tr. at 60-61; May 2, 2023 Tr. at 65; Blanco Aff. at ¶3, Dkt. No. 92-1. Skeirik was then read his Miranda rights, which he stated he understood. Blanco Aff. at ¶3, Dkt. No. 92-1.

Masterangelo was then arrested based on probable cause that he was engaged in drug dealing, for which he is now being prosecuted in State court. A search of the Kia incident to Mastrangelo's arrest led to the discovery of three mobile phones in the center console and the fanny pack that Skeirik had carried

7

out of 36A Norris Street and left behind. See Blanco Aff. at ¶3, Dkt. No. 92-1. The fanny pack contained Suboxone strips and a significant number of pills of varying color that appeared to the officers to be counterfeit or disguised narcotics. May 2, 2023 Tr. at 15, 31-32; Blanco Aff. at ¶3, Dkt. No. 92-1. The officers seized those items.

On February 27, 2020, Blanco put most of the foregoing information in an application for a search warrant. However, the application did not include the fact that his car had bumped into the Kia. The magistrate issued a warrant to search 36A Norris Street the same day. Later on February 27, 2020, police searched 36A Norris Street. Search Warrant, Dkt. No. 92-1; Lawrence Police Report at 7, Dkt. No. 91-1; May 1, 2023 Tr. at 86-87. In the search of the house the officers found a second firearm and significant quantities of drugs and drug paraphernalia, which they seized.[1] May 2, 2023 Tr. at 84.

IV. ANALYSIS

    a. <u>The Motion to Suppress Evidence Relating to Skeirik's Arrest is Not Meritorious</u>

The officers had probable cause to believe a crime was being committed when they seized Skeirik. Therefore, the seizure was

---

[1] The court does not find credible Blanco's claim that, when serving the search warrant for 36A Norris Street on February 27, 2020, he returned the fanny pack to Ashley King.

lawful and the motion to suppress the evidence resulting from it is not meritorious.

"Probable cause exists when 'the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense." United States v. Jorge, 865 F.2d 6, 9 (1st Cir. 1989) (quoting United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987) (internal quotation marks omitted)). Probable cause "requires only a probability or substantial chance" that criminal activity is occurring and is "not a high bar." District of Columbia v. Wesby, 138 S. Ct. 557, 586 (2018) (quoting Illinois v. Gates, 462 U.S. 213, 243-44 n.13 (1983); Kaley v. United States, 571 U.S. 320, 338 (2014)). Whether probable cause exists is evaluated as of the moment that the arrest is made. Beck v. Ohio, 379 U.S. 89, 91 (1964).

A seizure within the meaning of the Fourth Amendment occurs only if a reasonable person, under an objective standard, would have believed that he was not free to leave. See United States v. Mendenhall, 446 U.S. 544, 554 (1980). A seizure may be effectuated "by means of physical force or show of authority." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). Where a show of authority is employed, it must be accompanied by either: (1) physical force, or (2) submission to the assertion of authority. See California v. Hodari

9

D., 499 U.S. 621, 626 (1991); see also United States v. Jones, 609 F. Supp. 2d 113, 127 (D. Mass. 2009).

Here, even after Blanco's police car bumped into the Kia, and officers identified themselves as police and ordered Skeirik to freeze, Skeirik did not submit to their show of authority. Instead, he ran toward 36A Norris Street while officers pursued him on foot. The Supreme Court has stated that "[t]he word 'seizure' . . . does not remotely apply [] to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee." Hodari D., 499 U.S. at 626.

In addition, Skeirik threw the gun that had fallen out of his pocket over a fence. By so doing he abandoned the gun before he was tackled. Therefore, discovery of the firearm was not the result of a seizure whether lawful or not because, as in Hodari D.:

> assuming that [the officer's] pursuit in the present case constituted a "show of authority" enjoining [the defendant] to halt, since [the defendant] did not comply with that injunction he was not seized until he was tackled. The [evidence] abandoned while he was running was in this case not the fruit of a seizure . . . .

Hodari D., 499 U.S. at 629; see also Jones, 609 F. Supp. 2d at 126-27.

When Skeirik was tackled and seized, probable cause to arrest him existed. Evidence establishing that probable cause includes the following. Lawrence is a "source city" for cheap drugs within the Merrimack Valley. The detectives knew, as a result of their

training and experience, that buyers from New Hampshire and elsewhere often drive to Lawrence to purchase drugs for less than they could buy where they live. See May 1, 2023 Tr. at 42-43; May 2, 2023 Tr. at 20-21. The detectives also knew that the Prospect Hill neighborhood of Lawrence, of which Norris Street is a part, was a high crime area in which much drug trafficking was conducted, although Norris Street was not itself known for drug dealing. May 1, 2023 Tr. at 65; May 2, 2023 Tr. at 32-33.

In addition, the police had received a tip about possible drug dealing at 36 Norris Street. After beginning surveillance, the detectives observed a Kia with New Hampshire license plates parked outside 36 Norris Street. The detectives observed Skeirik exit 36A Norris Street with a fanny pack, which he handed to the driver of the Kia. Skeirik sat in the Kia for more than 15 minutes. He made movements that were, in the detectives' experience, indicative of a hand-to-hand exchange of drugs. Skeirik twice left the Kia without the fanny pack. The officers observed Skeirik and Mastrangelo engage in what they interpreted as countersurveillance, first together in the Kia, and then later when Skeirik stepped outside of the Kia to look back and forth at Blanco and Lakin's cars.

The officers did not need reasonable suspicion or probable cause to approach the Kia. See Mendenhall, 446 U.S. at 555; United States v. Pirelli, 650 F. Supp. 1254, 1259 (D. Mass. 1986).

11

Blanco's vehicle bumping into the Kia was not a seizure of the defendant, because he was not in the Kia at the time. It was, at most, a show of authority that Skeirik did not heed.

Rather, when the unmarked cars approached the Kia, Skeirik fled. He continued to run after the detectives identified themselves as police and ordered Skeirik to freeze. Headlong flight in a high-crime area contributes to the existence of probable cause. See Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000); Jones, 609 F. Supp. 2d at 125-127.

When Skeirik attempted to jump the lawnmower in the driveway 36A Norris Street shared with 38 Norris Street, the officers saw the firearm fall out of his pocket. The officers also saw Skeirik throw the gun over the fence into the neighboring yard. These observations also contributed to the existence of probable cause. See United States v. Franklin, 323 F.3d 1298, 1301 (11th Cir. 2003) (holding that "because [the defendant] was seized when he was tackled, the officers can consider everything that happened up to that point").

Skeirik was then tackled by Rivera and Blanco and placed under arrest. The officers had probable cause to arrest Skeirik when they tackled him.[2]

---

[2] Contrary to his contention, the police did not violate Skeirik's Fourth Amendment rights by going onto his property to pursue him. Because Skeirik was not in his house, but in his front yard, where he was "not merely visible to the public but was . . . exposed to

12

Police were authorized to search Skeirik incident to his lawful arrest. See Maryland v. King, 569 U.S. 435, 449 (2013) (collecting cases). The search of Skeirik uncovered bundles of cash totaling $4,205 and a mobile phone.

In view of the foregoing, the motion to suppress evidence of the money and telephone Skeirik was carrying, as well as the gun he threw over the fence, is not meritorious.

    b. Skeirik's Statement That He Was Going to Jail for a Long Time Did Not Result from a Violation of His Fifth Amendment Rights

As the Supreme Court has held, a person who has been arrested:

> must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

Miranda v. Arizona, 384 U.S. 436, 479 (1966); see also United States v. Gonzalez, 719 F. Supp. 2d 167, 170 (D. Mass. 2010).

---

public view, speech, hearing, and touch," he was in a "public place" for the purposes of Fourth Amendment protection. United States v. Santana, 427 U.S. 38, 42 (1976). Moreover, when he was seized, Skeirik was in his driveway, which was shared with 38 Norris Street and entirely visible from the street. See Ex. 14, Dkt. No. 113 (photograph of driveway between 36A and 38 Norris Street). "If the relevant part of the driveway is freely exposed to public view, it does not fall within the curtilage," which is protected by the Fourth Amendment. United States v. Brown, 5110 F.3d 57, 64-65 (2007). Therefore, when Skeirik was tackled, "he was not within an area coming under his home's umbrella of Fourth Amendment protection." Id. at 66.

13

When Skeirik yelled, "I'm going to jail for a long time," he had been handcuffed and was in police custody but had not yet been given Miranda warnings. However, Miranda applies only when a defendant is subject to "express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980); see also United States v. Taylor, 985 F.2d 3, 6-8 (1st Cir. 1993) (finding that "spontaneous" statements by the defendant prior to receiving Miranda warnings do not implicate the Fifth Amendment). Skeirik does not allege that officers questioned him or in any other way elicited his statement. Rather than responding to officers, Skeirik was spontaneously yelling to a woman inside 36A Norris Street. May 2, 2023 Tr. at 82-83. Therefore, his Fifth Amendment rights were not violated and his statement is admissible.

    c.   Seizure of the Fanny pack and Its Contents Did Not Violate Skeirik's Fourth Amendment Rights

Skeirik does not have "standing" to assert that the search of the fanny pack violated his Fourth Amendment rights. See United States v. Salvucci, 448 U.S. 83, 85 (1980). "As a threshold matter in arguing for suppression, the defendant must establish that he or she had a reasonable expectation of privacy in the area searched or the items seized." United States v. Symonevich, 688 F.3d 12, 18 n.3 (1st Cir. 2012). Skeirik abandoned the fanny pack in Mastrangelo's car at least at the time he fled from the police. A person does not have a reasonable expectation of privacy in an

14

item that he has abandoned. See United States v. Sullay, 585 F. Supp. 3d 110, 113-14 (D. Mass. 2022) (collecting cases).

If the fanny pack had not been not abandoned, and Skeirik intended to return to claim it, Skeirik would still not have standing because this case would be analogous to United States v. Symonevich, 688 F.3d 12 (1st Cir. 2012). In Symonevich, the defendant was a passenger in a car he did not own when he placed a container concealing heroin under the passenger seat at the inception of a traffic stop. Id. at 16-17. An officer later searched the car, found the container under the passenger seat, opened it, and found drugs. Id. The First Circuit held that the defendant did not have a reasonable expectation of privacy in the space beneath the passenger seat of a car that was not his and, therefore, had no standing to challenge the officer's search of either the car or the container in it, even if the defendant had established a possessory interest in the container itself. Id. at 18-21.

Moreover, the Lawrence police also arrested Mastrangelo on February 27, 2020. The Kia was searched incident to Mastrangelo's arrest because there was probable cause to believe that he had engaged in a drug transaction and that evidence concerning that crime would be found in the Kia. See Arizona v. Gant, 556 U.S. 332, 343 (2009). When searching a vehicle under these circumstances, police "may search not only 'every part of the

15

vehicle,' but also 'its contents, including all containers and packages, that may conceal the object of the search.'" United States v. Mata-Peña, 233 F. Supp. 3d 281, 287-88 (D.P.R. 2017) (quoting United States v. Santana, 895 F.2d 850, 852 (1st Cir. 1990)). Having seen Skeirik leave 36A Norris Street with the fanny pack and engage with Mastrangelo in what they had probable cause to believe was a drug transaction, the police had probable cause to believe the fanny pack would contain drugs or other evidence of drug dealing. Therefore, the detectives had the right to search the fanny pack Skeirik left inside Mastrangelo's car. The fanny pack contained pills that appeared to be narcotics.

Therefore, the Motion to Suppress evidence found in the Kia, particularly the fanny pack and the drugs in it, is not meritorious.

### d. The Search of 36A Norris Street Pursuant to a Warrant was Lawful

The Lawrence police applied for a warrant to search for illegal narcotics and firearms at 36A Norris Street. "A warrant application must demonstrate probable cause to believe that (1) a crime has been committed -- the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched -- the so-called 'nexus' element." United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999). "The standard is satisfied when the totality of the circumstances creates 'a fair probability

16

that . . . evidence of a crime will be found in a particular place.'" United States v. Silva, 742 F.3d 1, 7 (1st Cir. 2014) (quoting United States v. Hicks, 575 F.3d 130, 136 (1st Cir. 2009)).

Skeirik challenges the "nexus" requirement. The affidavit in support of the application for a search warrant informed the magistrate that there was probable cause to arrest Skeirik for illegal possession of drugs when he came out of 36A Norris Street. More specifically, the affidavit informed the magistrate that Skeirik left 36A Norris Street with a firearm and a fanny pack. Blanco Aff., Dkt. No. 92-1. Detectives had found bundles of currency totaling $4,205 in Skeirik's pockets and drugs in the fanny pack. Id. A CJIS query had revealed that Skeirik had multiple outstanding warrants, including for drug trafficking, and that he lived at 36A Norris Street. Id. The affidavit also stated that drug traffickers often keep weapons at locations where large amounts of drugs and money are being stored. Id. There was, therefore, probable cause to believe that drugs and/or firearms would be found in 36A Norris Street.

The police omitted from the application the fact that Blanco's unmarked car bumped the Kia. However, this fact was not material to finding probable cause to arrest Skeirik or to search 36A Norris Street. Suppression of evidence is required when: (1) a false statement or omission in the affidavit was made "knowingly and intentionally, or with reckless disregard for the truth," and (2)

17

this falsehood or omission was necessary for the finding of probable cause. Franks v. Delaware, 438 U.S. 154, 155-56 (1978); United States v. McLellan, 792 F.3d 200, 208 (1st Cir. 2015). Here, even assuming that the omission of the fact that Blanco's car bumped into the Kia was intentional, that fact would have had no bearing on the probable cause analysis. Therefore, the omission was not material.

In addition, this court must review the magistrate's decision to issue a warrant with deference. See United States v. Joubert, 778 F.3d 247, 252 (1st Cir. 2015). "The reviewing court's duty is 'simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Here, the court finds that such a substantial basis for finding probable cause existed.

Moreover, when there was not an intentional or reckless omission of material information in the application for a search warrant, and "the affidavit was not 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" suppression is not justified. United States v. Beckett, 321 F.3d 26, 32 (1st Cir. 2003) (quoting United States v. Leon, 428 U.S. 897, 923 (1984)). This is, at a minimum, such a case.

Therefore, the Motion to Suppress the evidence seized at 36A Norris Street is not meritorious.

V.  ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Defendant Stephen Skeirik's Renewed Motion to Suppress (Dkt. No. 90) is DENIED.

2. As counsel for Skeirik stated on May 3, 2023 that Skeirik would likely plead guilty if his Motion to Suppress were denied, the defendant shall, by May 30, 2023, report whether he wishes to enter a guilty plea.

3. A Rule 11 hearing or a status conference shall be held on May 31, 2023, at 1:30 p.m.

                                                                              UNITED STATES DISTRICT JUDGE